Willie Jackson, pro se
United States Penitentiary
3901 Klein Boulevard
Lompoc, California 93436

UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | COA #0630182 |
| ) | DC #3:04-cr-00141--RRB |
| Plaintiff, ) | |
| ) | **MOTION FOR SENTENCE REDUCTION:** |
| vs. ) | **OF NON-FINAL SENTENCE** |
| ) | **UNDER 18 U.S.C. §3582(C)(2)** [*with* |
| WILLIE KEITH JACKSON, ) | *consideration given to factors set forth in* |
| ) | *18 U.S.C. §3553*] |
| Defendant. ) | **AND ENLIGHT OF THE RECENT** |
| ) | **SUPREME COURT DECISION(S)** |
| ) | **IN KIMBROUGH and GALL** |

The pro se Defendant Jackson ask that the Court, now, consider the changes in the federal Sentencing Guidelines that reduce the penalties for crack cocaine offenses on November 1, 2007 and made retroactive on December 11, 2007 [to become effective March 3, 2008]. **Given, Jackson's conviction does not become final until after February 25, 2008 [of which he intends to file his writ].** See Griffith v. Kentucky, 479 U.S. 314 (1987) **323**, 93 L Ed 2d 649, 107 S. Ct. 708: "A federal conviction becomes final when the time for filing a petition for writ of certiorari has elapsed or a timely filed petition has been finally denied", 'final' means a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari finally denied" Griffith v. Kentucky, Id.. And, the recent Supreme Court Decisions [Kimbrough v. United States, 522 U.S.____2007, 06-6330; and Gall v. United States, 522 U.S.____2007, 06-7949, both decided on December 10,

1

264

2007], which give the sentencing Court even more leeway to shorten sentences involving controlled substance [crack] enhancements. Jackson ask that this Court now give a fair look into the weight of the unfair disparity between powder and crack cocaine, which, "fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act". See Kimbrough v. United States, Id..

THE THREE PROBLEMS THE COMMISSION IDENTIFIED
WHICH LEAD TO THE AMENDMENTS
AND
WERE THE CATALYSTS WHICH PROMPTED THE SUPREME COURT
IN FURTHER REDUCTION
IN THERE MOST RECENT HOLDINGS DECIDED DECEMBER 10, 2007

Coming to the conclusion that the disparity between crack and powder cocaine is simply unfair was not a rash decision, as was the 100:1 ratio that was applied in the mid-80's to a new method ingesting the drug. And, passed through Congress without proper public comment [*in Congress on the matter*]. See U.S. v. Smith, 359 F.Supp. 2d 771, 778. Since the 1980's its been determined that there are more similarities than differences "and many people involved in sentencing have lamented the fact that black people are disproportionately affected by crack related sentences" [Wednesday edition of The Sacramento Bee 12/12/2007: Judge William Sessions of the U.S. Sentencing Commission]. "85 percent of the federal inmates behind bars for crack offenses are black". See Id..

> *Although the Commission immediately used the 100:1 ratio to define base offense levels for all crack and powder offenses, it later determined that the crack/powder sentencing disparity is generally unwarranted. Based on additional research and experience with the 100-to-1 ratio.* ***the Commission concluded that the disparity "fails to meet the sentencing objectives set forth by Congress in both the Sentencing***

*Reform Act and the 1986 Act.". 2002 Report 91. In a series of reports, the Commission identified three problems with the crack/powder disparity. **First**, the Commission reported, the 100-to-1 ratio rested on assumptions about, "the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support." Ibid.; see United States Sentencing Commission. Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007) (**ratio Congress embedded in the statute far overstate[s]" both "the relative harmfulness" of crack cocaine, and the "seriousness of most crack cocaine offenses"**). For example, **the Commission found that crack is associated with "significantly less trafficking-related violence . . . than previously assumed."** 2002 Report 100. It also observed that "the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure." Id., at 94. The Commission furthermore noted that "the epidemic of crack cocaine use by youth never materialized to the extent feared." Id., at 96.*

***Second.*** *The Commission concluded that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers. Drug importers and major traffickers generally deal in powder cocaine. which is then converted into crack by street-level sellers. See 1995 Report 66-67. But the 100-to-1 ratio can lead to the "anomalous" result that **"retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced."** Id., at 174.*

***Finally.*** *the Commission stated that the crack/powder sentencing differential "fosters disrespect for and lack of confidence in the criminal justice system" because of a "widely-held perception" that it "promotes unwarranted disparity based on race." 2002 Report 103. Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 ratio are imposed "primarily upon black offenders." Ibid. . . . the 100-to-1 crack/powder ratio, the Commission concluded significantly overstates the differences between the two forms of the drug. Accordingly, the Commission recommended that the ration be "substantially" reduced. Id., at viii*

After the Commissions use of the 100:1 ratio, which was based on dearth evidence to support such a view, was later found to be far to severe a punishment. And, overstated the objectives intended by Congress. In rectifying the deficiencies "the Commission recommended that the ratio be "substantially reduced". See <u>Kimbrough</u>,

3

Id., p. 10; also see Smith, Id. 778. "Including, the threshold for the 5 and 10 years mandatory minimum penalties, be increased from 5 and 50 grams to 25 and 250 grams respectively." See Dianna Murphy, Statement to Senate Judiciary Committee, May 22, 2002, reprinted in 14 Fed. Sen. Retpr at 240, cited in Smith, Id., 781.

Because, the Commission did not fulfill the technical requirements of 28 USCS §994(p), Congress was forced to reject the 1995 1:1 ratio due to the technical shortcomings and having nothing to do with the 1:1 proposal in and of itself.

**Due to "Post-Booker, none of these sentences is strictly mandatory**... If the Court were to employ either the 20:1 ratio most recently recommended by the Commission or the 10:1 ratio recommended by the Clinton administration. ... offense level would be 32, ultimately resulting in a sentence of 210 to 262 months. The Commission's 1997 recommendation of 5:1 produces a base offense level of 28, and a sentence of 135 to 168 months. Finally, the *Commission's 1995 recommendation of a 1:1 equivalency results in a base offense level of 26, and a sentence of 108 to 135 months."* See Simon v. U.S., 361 F. Supp. 35, 46.

The Court, **now**, has a duty to consider Jackson's guideline range along with the factors listed in §3553(a). The "...greater the weight given to the Guidelines, the closer the Court draws to committing the act that Booker [currently held in the Supreme Court's latest Decisions (Kimbrough and Gall)] forbids ---- a Guideline sentence based on facts found by a preponderance of the evidence by a judge. Cite omitted. *Such a regime threatens a de facto mandatory sentence."*

4

BESIDES WHAT THE COMMISSION HAS CONCLUDED
AND
CONGRESS HAS ENACTED
THE DEFENDANT ASK THE COURT FUTHER CONSIDER
§3553(a)
IN CLACULATING THE REDUCTION

*Given, the Sentencing Commission levels reduction, and Congress support, along with either's view of the 100:1 ratio concerning authority of the district court to drastically depart from Guideline ranges and mandatory minimums. And, the latest Supreme Court support of the idea that 100:1 disparity is simply wrong, noting that fair sentencing is in the purview of the District Court.*

*Jackson ask that this Court fashion a fair sentence, based on proper jurisprudence.*

*Respectfully Submitted January 11, 2008, at Lompoc California.*

                                                Willie Jackson
                                                Pro se

**I certify that a copy
of the foregoing was sent
by U.S. Mail**

**TO:  John Novak
SAUSA
222 W. 7th Ave., #9, Rm 253
Anchorage, Alaska 99513
Ph #(907)271-5071**

5